UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

|  |  |  |
|---|---|---|
| WALDEMAR WASNIEWSKI, | : | CASE NO. 5:06-CV-2548 |
| Petitioner, | : | |
| vs. | : | OPINION & ORDER |
|  | : | [Resolving Docs. No. 38, 48] |
| MONIKA GRZELAK-JOHANNSEN, | : | |
| Respondent. | : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Petitioner Waldemar Wasniewski ("Wasniewski") filed this petition under the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11610 (the "Act"), seeking the return of his son, Pawel Wasniewski ("Pawel"), to Poland. [Doc. 1.] In his petition, Wasniewski alleges that his ex-wife, Respondent Monika Grzelak-Johannsen ("Johannsen") violated the Hague Convention on Civil Aspects of International Child Abduction, July 1, 1988, T.I.A.S. No. 11670 ("Hague Convention"), by taking Pawel to live with her in the United States without Wasniewski's knowledge or consent and in contravention of existing divorce and child custody decrees of the Polish courts. *Id.*

With this Opinion and Order, the Court decides whether to summarily grant the Hague Convention petition of Petitioner Wasniewski and order the return of his son, Pawel, to Poland. [Docs. 1, 38.] Johannsen concedes that she wrongfully removed Pawel, yet opposes Wasniewski's summary judgment motion on the grounds that Pawel is now "well-settled" in the United States. [Doc. 43.] Johannsen additionally says that Pawel, now thirteen, should be permitted to express his desires regarding where he should live. [Doc. 26.] The Court considers the parties' arguments and

-1-

Case No. 5:06-CV-2548
Gwin, J.

requests in this Opinion and Order. In this discussion, the Court also clarifies certain questions relating to the role of David J. Michalski, Esq. ("Michalski"), Pawel's guardian *ad litem* and attorney, in this case. [Doc. 48.]

For the reasons presented below, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioner Wasniewski's motion for summary judgment. The Court also **ORDERS** that Attorney Michalski limit his representation to Pawel's interests as set forth in the Court's Opinions and Orders. Finally, the Court also **ORDERS** that Respondent Johannsen facilitate access between Attorney Michalski and Pawel as needed and reasonable.

## I. Background

This case follows Respondent Johannsen's abduction of Pawel from Wasniewski's custody in Inowroclaw, Poland to Hudson, Ohio. Unlike a "standard" kidnaping case, this action presents unique legal questions because it implicates the Hague Convention.[1] As set-forth more fully below, the Hague Convention provides a uniform procedure within signatory countries for the return of a "wrongfully removed" child to his "habitual residence." With this action, Petitioner Wasniewski invokes the provisions of the Hague Convention and seeks the return of Pawel from Respondent Johannsen's possession in the United States to Poland.[2]

The parties present the Court with the following facts. In 1993, Wasniewski and Johannsen, both Polish nationals, were married in Inowroclaw. [Docs. 1, 38, 43.] Johannsen gave birth to Pawel during the marriage in 1994. *Id.* In 1998, Respondent Johannsen abandoned Pawel to live

---

[1] The United States, signatory to the Hague Convention, has implemented the convention's provisions in the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11610.

[2] Like the United States, Poland has signatory status to the Hague Convention. *See* Hague Convention preamble.

-2-

Case No. 5:06-CV-2548
Gwin, J.

with Rolland Johannsen in the United States. *Id.* At this time, Pawel resided with his maternal grandparents in Inowroclaw and had daily contact with his father, Wasniewski. *Id.* Johannsen continued some contact with Pawel from the United States. *Id.*

In 2003, Wasniewski divorced Johannsen through a decree from the District Court in Bydgoszcz, Poland. [Docs. 38, 43.] The District Court issued a divorce decree that granted Wasniewski parental authority over Pawel and mandated that Pawel continue to live with his maternal grandparents in Inowroclaw. *Id.* The District Court's decree also ordered Johannsen to pay Wasniewski child support for Pawel's maintenance. *Id.*

During this time, Respondent continued to live with Rolland Johannsen in the United States.[3/] [Doc. 38.] At some point, Respondent Johannsen sought and obtained a Polish passport for Pawel and sought, but was denied, permission from the Polish Family Court to bring Pawel to the United States. *Id.* At the same time, Respondent Johannsen sought and obtained a United States immigrant visa for Pawel from American authorities.[4/] *Id.*

In October 2004, Respondent Johannsen traveled from the United States to Poland, where, on November 1, 2004, without prior notice to Petitioner Wasniewski, she took Pawel from Inowroclaw. [Docs. 1, 38, 43.] On November 2, 2004, Johannsen telephoned Wasniewski and told him that she had taken Pawel to Japan. [Doc. 38.] However, instead of traveling to Japan, Johannsen

---

[3/] Prior to her official divorce in Poland, Petitioner Johannsen sought to marry Rolland Johannsen in Las Vegas, Nevada in June 2002. [Doc. 38.] This union had no legal effect because Respondent Johannsen continued to be married to Petitioner Wasniewski. *Id.* In April 2007, Respondent married Rolland Johannsen, more than two years after taking Pawel from Poland and six months after Petitioner filed this action. [Doc. 38.]

[4/] The parties' briefings do not make clear the basis on which Respondent Johannsen secured United States immigration status for Pawel. In his brief in support of his instant motion, Wasniewski implies that Johannsen fraudulently did so based on the questionable circumstances of her own United States Permanent Residence Card. [Doc. 38.] In her opposing brief, Johannsen does not respond to Wasniewski's inferences. [Doc. 43.]

Case No. 5:06-CV-2548
Gwin, J.

brought Pawel to the United States and, ultimately, moved to Hudson, Ohio, with Rolland Johannsen. *Id.* Since the initiation of this action, the Johannsens have again moved with Pawel, this time to Omaha, Nebraska. *Id.*

In her pleadings, Respondent Johannsen admits that, prior to removing Pawel from Inowroclaw, she neither sought, nor received the permission of either the Polish courts or Wasniewski. [Docs. 1, 38, 43.] Johannsen also admits that, once in the United States, she did not contact Wasniewski or her parents with any information regarding Pawel's whereabouts. [Doc. 38.] Respondent Johannsen, Rolland Johannsen, and Pawel eventually moved to Omaha, Nebraska, where they now reside. [Docs. 38, 43.]

Upon discovering that Johannsen had abducted Pawel, Wasniewski immediately initiated a search for his son through the Inowroclaw Police Department, the Polish Family Court, Poland's Ministry of Justice, and the National Center for Missing and Exploited Children ("National Center") in the United States. [Docs. 1, 38.] In April 2006, the National Center finally located Pawel in Hudson, Ohio and began to assist Petitioner Wasniewski in his efforts to retain *pro bono* counsel in the Northern District of Ohio. [Doc. 38.]

On October 23, 2006, Wasniewski filed his Hague Convention petition with this Court. [Docs. 1, 38, 43.] On November 22, 2006, Johannsen responded. [Doc. 3.] In April and June 2007, the parties requested the Court appoint a guardian *ad litem* and attorney to Pawel, which the Court did on June 15, 2007. [Doc. 46.] During this time, Wasniewski also filed for summary judgment, Doc. 38, which Johannsen opposed, Doc. 43.

In his motion for summary judgment, Petitioner Wasniewski says that the "undisputed material facts in this case establish that Respondent [Johannsen] wrongfully removed Pawel from

-4-

Case No. 5:06-CV-2548
Gwin, J.

his habitual residence, Poland, in breach of a divorce decree which awarded Mr. Wasniewski full parental authority (a concept akin to custody) over the child." [Doc. 38.] Wasniewski further says that Johannsen's defenses do not prevent Pawel's return to Poland by the Court. [Docs. 38, 45.] Specifically, Wasniewski argues against Johannsen's contention that he untimely filed his petition or, alternatively, the Court should solicit and consider Pawel's view on his preferred residence. *Id.* Accordingly, Wasniewski requests that the Court summarily order Pawel's return to Poland. *Id.*

Respondent Johannsen concedes that she "wrongfully removed" Pawel from his father's custody in Poland. [Doc. 43.] Nevertheless, Johannsen says "Pawel is well-settled in the United States and as a result, he should not be uprooted from his community." *Id.* Johannsen also says that "Pawel is also of suitable age and maturity to determine for himself whether he wishes to remain in the United States." *Id*. Johannsen concludes that the Court "must den[y]" Petitioner Wasniewski's motion for summary judgment and allow Pawel to remain in the United States. *Id.*

## II.  Legal Standard

The International Child Abduction Remedies Act ratifies the Hague Convention and gives this Court jurisdiction over Wasniewski's petition for the return of Pawel. *See* 42 U.S.C. § 11603(a). The goal of the Hague Convention is "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access[.]" Hague Convention preamble. Courts of proper jurisdiction have the authority to determine the merits of a Hague Convention abduction claim, but not the merits of any underlying custody claim. 42 U.S.C. § 11601(b)(4). *See also Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir. 1993); *Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir.1999); *Anderson v. Acree*, 250 F. Supp. 2d 872, 874 (S.D. Ohio

Case No. 5:06-CV-2548
Gwin, J.

2002). *And see* Hague Convention art. 19 ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue"). A Hague Convention proceeding merely determines which nation should hear the underlying custody claim, not the merits of any particular custody case. *See Blondin*, 189 F.3d at 245.

Under the Hague Convention, to secure the return of an abducted child, a petitioner need establish by a preponderance of the evidence that "the child has been wrongfully removed" within the meaning of the agreement. 42 U.S.C. § 11603(e)(1). A petitioner establishes a "wrongful" removal by showing that (i) the child "habitually" resided in the petitioner's country of residence at the time of removal; (ii) the child's removal breached the petitioner's custody rights under the law of his home state; and, (iii) the petitioner enjoyed those rights at the time of the child's removal. *See Miller v. Miller,* 240 F.3d 392, 398 (4th Cir. 2001) (*citing* Hague Convention, arts. 3, 4). Thus, Petitioner Wasniewski bears the burden of showing by a preponderance of the evidence a "wrongful removal." *Miller*, 240 F.3d at 398; *Acree*, 250 F. Supp. 2d at 874.

Upon showing of "wrongful removal," a court must return the child to the petitioner unless the respondent establishes one of four defenses. *Miller*, 240 F.3d at 398. *See* also 42 U.S.C. §§ 11603(e)(2)(A), (B) (requiring proof that one of the exceptions set forth in Articles 12, 13, 13b, or 20 of the Hague Convention applies). A court applies each exception narrowly. *Rydder v. Rydder*, 49 F.3d 369, 372 (8th Cir.1995). In this case, Respondent Johannsen raises only the "Article 12" defense, Doc. 43, which she must prove by a preponderance of the evidence, 42 U.S.C. § 11603(e)(2)(B). Article 12 of the Hague Convention provides, in relevant part:

> Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the

-6-

Case No. 5:06-CV-2548
Gwin, J.

> authority concerned shall order the return of the child *forthwith*.
>
> The judicial or administrative authority, *even where the proceedings have been commenced after the expiration of the period of one year* referred to in the preceding paragraph, shall also order the return of the child, *unless it is demonstrated that the child is now settled in its new environment.*

Hague Convention, art. 12 (emphasis added).

The Hague Convention supports summary resolution of petitions for return by requiring courts "to place these cases on a 'fast track' in order to expedite these proceedings and carry the purpose of the Convention." *March v. Levine*, 249 F.3d 462, 474 (6th Cir. 2001). As with other applications of summary judgment, a party to a Hague Convention petition can access their requested relief by showing an absence of genuine issues of material fact and showing that the undisputed facts warrant judgment for them as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

### III. Analysis

With his motion for summary judgment, Wasniewski presents the Court with three issues: (i) whether Johannsen wrongfully removed Pawel from Poland in violation of Section 11603(e)(1) of the Act; (ii) whether Article 12's one year time frame equitably tolls; and, (iii) if Article 12 does not toll, whether any genuine issue of material fact exists as to Pawel's "settle[ment] in [his] new environment" as understood in that provision of the Hague Convention.

The Court addresses each issue in turn.

The Court first decides whether material issues exist regarding whether Respondent Johannsen "wrongfully removed" Pawel from Poland, his "habitual residence," in breach of a divorce decree that awarded Wasniewski parental authority over Pawel. [Doc. 38.]

The Court finds that no material issue exists and that Respondent Johannsen wrongfully

-7-

Case No. 5:06-CV-2548
Gwin, J.

removed Pawel from Poland in violation of an order of Polish District Court properly exercising control over child custody issues regarding Pawel. Under the decree of Poland's Bydgoszcz District Court, Pawel habitually resided in Poland where Wasniewski exercised parental authority over him at the time Respondent Johannsen took the child to the United States in violation of the District Court's order. The undisputed facts and circumstances contained in the record clearly establish Johannsen's "wrongful removal" of Pawel from his "habitual residence" in violation of the Hague Convention.

Johannsen does not challenge this outcome. Indeed, Respondent concedes all three elements of "wrongful removal" in her brief in opposition to her former husband's motion for summary judgment. [Doc. 43.] Specifically, Johannsen says "[i]n the case at bar, Respondent acknowledges that immediately prior to November 1, 2004, Pawel Wasniewski was a habitual resident of Poland, and that Waldemar Wasniewski was exercising parental rights over this child. Respondent further acknowledges that she brought Pawel to the United States without the consent of Petitioner." *Id.* Again, no questions of fact exist regarding Johannsen's "wrongful removal" of Pawel from his home in Poland. Thus, the Court finds that Johannsen wrongfully removed Pawel from his habitual residence in derogation of the Hague Convention.

Although Johannsen acknowledges that she "wrongfully removed" Pawel from Poland, she argues that this Court still need determine whether the child has become well-settled in the United States. [Doc. 43.] Johannsen comes to this position by saying that Wasniewski failed to petition for Pawel's return within one year of her abduction of Pawel from Poland. *Id.* If Wasniewski's petition had been brought within one year, the Hague Convention calls for the "forthwith" return of Pawel. Hague Convention, art. 12. Generally, with petitions brought more than one year after the

Case No. 5:06-CV-2548
Gwin, J.

illegal removal, courts consider whether the child "is now settled in [his] new environment." [Docs. 38, 43, 45.]

Admitting that he initiated his petition to this Court more than one year after Pawel's wrongful removal from Poland, Petitioner Wasniewski says the Court should equitably toll the one year period and not consider Johannsen's "well settled" argument because Johannsen "took active steps to conceal Pawel's whereabouts" from Wasniewski as he worked diligently to locate his son. [Docs. 38, 45.] Respondent Johannsen denies that she actively concealed Pawel from Wasniewski and says that, in any event, Pawel "is well settled in the United States and, as a result, he should not be uprooted from his community." [Doc. 43.] Thus, the Court must decide whether the concept of equitable tolling can delay the start of Article 12's one year period and thereby preclude consideration of the "settled" issue.

In deciding whether Wasniewski's diligent efforts to return Pawel to Poland – efforts that failed because Johannsen concealed Pawel's whereabouts – should bar consideration of the "well-settled" question, the Court considers alternative approaches. The Sixth Circuit has not clearly adopted either view. Neither the Hague Convention, nor the International Child Abduction Remedies Act explicitly say that Article 12 should be subject to equitable tolling. Nevertheless, courts have allowed tolling based upon policy considerations and on the belief that Congress must have intended to allow tolling. *See, e.g.*, *Mendez Lynch v. Mendez Lynch*, 220 F. Supp. 2d 1347, 1362 (M.D. Fla. 2002); *Bocquet v. Ouzid*, 225 F. Supp. 2d 1337 at 1348 (S.D. Fla. 2002).

Most courts that have examined this question find that wrongful removal accompanied by efforts to secrete a child's location tolls the one year period during which the issue of whether the child is well-settled is not before the court. *See, e.g.*, *Furnes v. Reeves*, 362 F.3d 702, 724 (11th Cir.

-9-

Case No. 5:06-CV-2548
Gwin, J.

2004) (finding that equitable tolling applies to rule denying consideration of whether child is well-settled where the parent removing the child has secreted the child from the parent seeking return); *Mendez Lynch*, 220 F. Supp. 2d at 1362-63 (holding that equitable tolling applied to Hague Convention petitions because otherwise "a parent who abducts and conceals children for more than one year will be rewarded for the misconduct by creating eligibility for an affirmative defense not otherwise available").

Other courts find that Article 12's language should not be interpreted to allow tolling even where the removing parent secretes the location of the child from the custodial parent. A sister court from the Southern District of Ohio provides the reasoning for this position:

> [T]his court is not convinced that the one-year period referred to in Article 12 is a statute of limitations. A petition for the return of a child is not barred if it is filed over one year from the date of removal. Rather, the drafters of the Hague Convention decided that after the passage of a year, it became a reasonable possibility that the child could be harmed by its removal from an environment into which the child had become settled, and that the court ought to be allowed to consider this factor in making the decision whether to order the child's return. This potential harm to the child remains regardless of whether the petitioner has a good reason for failing to file the petition sooner, such as where the respondent has concealed the child's whereabouts. There is nothing in the language of the Hague Convention which suggests the fact that the child is settled in his or her new environment may not be considered if the petitioning parent has good reason for failing to file the petition within one year.

*Acree*, 250 F. Supp. 2d at 875.

Competing policy concerns collide as between these positions. The Hague Convention abjures rewarding an abductor for concealing a child long enough for the child to become "well-settled," i.e., rewarding the abductor for conduct the Convention seeks to prevent. *Bocquet*, 225 F. Supp. 2d at 1348-49. Alternatively, the Hague Convention also seeks to prevent further harmful effects associated with a "second removal," uprooting the child from the place to which he

Case No. 5:06-CV-2548
Gwin, J.

now has developed ties. *See In re Robinson*, 983 F. Supp. 1339, 1346 (D. Colo.1997). These courts take the position that Article 12 reflects a belief that even if a wrongful removal has occurred, it might be worse to order the child to be uprooted again after the passage of a certain amount of time.

Weighing these competing arguments, the Court believes Johannsen's conduct warrants a tolling of Article 12's one year limitation. Although not a statute of limitations, Article 12's proscribed time frame should not be considered here, where Johannsen absconded with Pawel without prior notice or post-abduction contact. *Anderson*, 250 F. Supp. 2d at 875. This outcome has its basis in fairness and respect for the intent of the Hague Convention:

> A rule that stated that a court considering a Hague petition *cannot* return a child if the "abducting" parent has established the elements of Article 12 would create a perverse incentive for abducting parents. Such a rule would inevitably result in scenarios where abducting parents, hoping to avoid the mandates of the Convention, attempt to conceal the child from the non-abducting parent for more than one year. Then, if hailed into court on a Hague petition (presuming the non-abducting parent could ever locate the child), the abducting parent would have achieved what amounts to an immunity from the Convention. The purposes of the Convention would be directly controverted were parents allowed to circumvent the Convention's strictures by fleeing from the law.

*Belay v. Getachew*, 272 F. Supp. 2d 553, 562 (D. Md. 2003) (emphasis in original). *See also Mozes v. Mozes*, 239 F.3d 1067, 1079 (9th Cir. 2001) (noting that "[t]he Convention is designed to prevent child abduction by reducing the incentive of the would-be abductor to seek unilateral custody over a child in another country. The greater the ease with which habitual residence may be shifted without the consent of both parents, the greater the incentive to try").

The Hague Convention's purposes would be directly defeated were parents allowed to circumvent the Convention's strictures by first fleeing from the law and then using its provisions to protect their wrongful act. The Court cannot condone such a result.

In this case, Petitioner Wasniewski acted diligently in using local, national, and international

-11-

Case No. 5:06-CV-2548
Gwin, J.

resources to track Respondent Johannsen from Inowroclaw, Poland to Hudson, Ohio. Equally, Johannsen's lack of communication with Wasniewski -- her son's legal custodian -- and her failure to give her own parents her United States address, shows that she was endeavoring to defeat the Polish Court's custody order. Johannsen's obfuscation, given the Hague Convention's requirements, creates the basis for tolling Article 12. *See Van Driessche v. Ohio-Esezeoboh*, 466 F. Supp. 2d 828, 849 (S.D. Tex. 2006) (tolling applies when removing parent "took significant, active steps to conceal [daughter] from her father while [father] was actively seeking [daughter's] whereabouts"). By abducting Pawel, Johannsen violated the direct order of the Polish Court that denied her permission to take Pawel to the United States. The passage of time should not give advantage to the abductor who conceals the child or violates a court's order.

Applying equitable principles to this case, the Court finds that the one year period before the issue of Pawel's status as "well-settled" tolls from the child's abduction on November 1, 2004 until April 2006, when the National Center for Missing and Exploited Children advised Petitioner Wasniewski that Pawel was in Hudson, Ohio. Wasniewski filed his Complaint against Johannsen on October 23, 2006, well within the tolled one year limitation. *See* Doc. 1. After accounting for the period that Johannsen hid Pawel's whereabouts from Wasniewski, the Court finds that it need not decide whether "the child is now settled in its new environment." Hague Convention, art. 12.

Once a petitioner establishes that removal was wrongful, the child must be returned unless the respondent can establish a defense. *Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir.1996). Respondent Johannsen alternatively argues that Pawel should not be returned to Poland because Pawel "objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views" [Doc. 43.] A court construes this defense narrowly. *See,*

Case No. 5:06-CV-2548
Gwin, J.

*e.g.*, *de Silva v. Pitts*, 481 F.3d 1279, 1085 (10th Cir. 2007). The party opposing the child's return must establish the child's maturity by a preponderance of the evidence. *Id.*

In considering this affirmative defense, the Court need make individual consideration of Pawel and his circumstances. Professor Elisa Perez-Vera, the Official Reporter of the Hague Convention, describes this determination:

> [T]he Convention also provides that the child's views concerning the essential question of its return or retention may be conclusive, provided it has, according to the competent authorities, attained an age and degree of maturity sufficient for its views to be taken into account. In this way, the Convention gives children the possibility of interpreting their own interests. Of course, this provision could prove dangerous if it were applied by means of the direct questioning of young people who may admittedly have a clear grasp of the situation but who may also suffer serious psychological harm if they think they are being forced to choose between two parents. However, such a provision is absolutely necessary given the fact that the Convention applies, *ratione personae*, to all children under the age of sixteen; the fact must be acknowledged that it would be very difficult to accept that a child of, for example, fifteen years of age, should be returned against its will. Moreover, as regards this particular point, all efforts to agree on a minimum age at which the views of the child could be taken into account failed, since all the ages suggested seemed artificial, even arbitrary. It seemed best to leave the application of this clause to the discretion of the competent authorities.

Perez-Vera, ACTES ET DOCUMENTS DE LA QUATORZIÈME SESSION, Oct. 6-25, 1980, Vol. III, 433, para. 30.

The Hague Convention generally endeavors to protect children from the harmful effects of "wrongful removal." The "age and maturity" exception provides a different consideration. The Convention contains no age limit for applying the exception. *Blondin*, 238 F.3d at 167. In general, a court considers the child's maturity and whether the child's opinion results from undue influence exerted by the absconding parent. *See de Silva* 481 F.3d at 1086. In this case, the Court will consider these factors at the trial of this matter set for 8:00 a.m., Monday, July 30, 2007 in Courtroom 18A, Carl B, Stokes, United States Courthouse, 801 West Superior Avenue in Cleveland,

-13-

Case No. 5:06-CV-2548
Gwin, J.

Ohio.

The Court notes that Wasniewski and Johannsen disagree on the utility of Pawel as a witness in this case. [Docs. 38, 43, 45.] The Court acknowledges, but rejects, Petitioner's argument that influence exerted on Pawel by Respondent and Rolland Johannsen render Pawel's testimony untrustworthy. The Court may take this influence into account in determining whether to consider Pawel's feelings about being returned to Poland. Thus, if either Petitioner or Respondent wish to call Pawel as a witness, they may.

If the parties call Pawel as a witness, Attorney Michalski will represent Pawel's interests. Attorney Michalski also will assist Pawel and the Court during *in camera* interviews, if any. Further, as set forth in the Court's June 15, 2007 Order, Attorney Michalski shall neither assist, nor advocate for, either Petitioner Wasniewski or Respondent Johannsen.[5/] [Doc. 46.] Further, Respondent Johannsen shall facilitate access between Attorney Michalski and Pawel as needed and reasonable.

With regard to Attorney Michalski's specific inquiry in his instant motion, he shall not conduct a factual investigation into Respondent Johannsen's "well-settled" defense prior to the upcoming bench trial. *Id.* The Court expects that Respondent will gather and present any facts relevant to her defense in this case.

## IV. Conclusion

For these reasons, the Court finds that Johannsen wrongfully removed Pawel from the custody of his father in Poland. After accounting for the tolling of Article 12's one year time

---

[5/] After revisiting its June 15, 2007 Order, the Court clarifies that the "party's abduction claims and defenses" mean those personal to Pawel, as relevant.

-14-

Case No. 5:06-CV-2548
Gwin, J.

limitation as discussed above, the Court finds that Wasniewski brought this action within one year of Pawel's wrongful removal. Given this action's initiation within the one year time limit, the Court cannot consider whether Pawel has become "well-settled" in the United States. However, the Court need consider Pawel's opinion regarding his return to Poland and consider whether he has attained an age and degree of maturity at which it is appropriate for the Court to consider his views.

Thus, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioner Wasniewski's motion for summary judgment. The Court also **ORDERS** that Attorney Michalski limit his representation to Pawel's interests and needs as set forth in the Court's previous and current Opinions and Orders. Finally, the Court also **ORDERS** that Respondent Johannsen facilitate access between Attorney Michalski and Pawel as needed and reasonable.

IT IS SO ORDERED.


Dated: July 13, 2007                          s/         *James S. Gwin*
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE