UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
WALDEMAR WASNIEWSKI,        :     CASE NO. 5:06-CV-2548
                            :
            Petitioner,     :
                            :
vs.                         :     OPINION & ORDER
                            :     [Resolving Doc. Nos. 1, 26, 38]
MONIKA GRZELAK-JOHANNSEN,   :
                            :
            Respondent.     :
                            :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

After a bench trial on July 30, 2007, the Court decides this civil action, brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), as implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11610. In this case, Petitioner Waldemar Wasniewski's ("Wasniewski") petitions for the return of his thirteen-year-old child Pawel Wasniewski ("Pawel" or "the Child") to Poland following Respondent Monika Grzelak-Johannsen's ("Johannsen") wrongful removal of Pawel to the United States.

Having heard the parties' evidence and arguments and conducted an *in camera* interview with Pawel, the Court **GRANTS** Wasniewski's petition and **ORDERS** Respondent Johannsen's return of Pawel to Poland.

-1-

Case No. 5:06-CV-2548
Gwin, J.

## I. Background

Petitioner Wasniewski and Respondent Johannsen married in Poland. [Docs. 1, 38, 43, 58.] The marriage produced one child, Pawel, who is now thirteen-years-old. *Id.* In 1998, Respondent Johannsen abandoned Petitioner Wasniewski and Pawel to live with Rolland Johannsen in the United States. *Id.* At this time, Pawel resided with his maternal grandparents in Inowroclaw, Poland and had daily contact with his father, Petitioner Wasniewski. *Id.* Respondent Johannsen had some contact with Pawel from the United States. *Id.*

In 2003, the District Court in Bydgoszcz, Poland granted Petitioner and Respondent a divorce, conferred parental authority on Petitioner, and mandated that Pawel continue to live with his maternal grandparents in Inowroclaw. [Docs. 38, 43.] The Bydgoszcz District Court also ordered Johannsen to pay Wasniewski child support for Pawel's maintenance. *Id.*

During this time, Respondent continued to live with Rolland Johannsen in the United States. [Doc. 38.] At some point, Respondent sought and obtained a Polish passport for Pawel and sought, but was denied, permission from the Polish Family Court to bring Pawel to the United States. *Id.* At the same time, Respondent sought and obtained a United States immigrant visa for Pawel from American authorities. *Id.*

In October 2004, Respondent traveled from the United States to Poland, where, on November 1, 2004, without prior notice to the Polish courts or Petitioner, she took Pawel from Inowroclaw. [Docs. 1, 38, 43.] She also made efforts to secrete Pawel's location from Petitioner Wasniewski. On November 2, 2004, Respondent telephoned Petitioner and told him that she had taken Pawel to Japan. [Doc. 38.] However, instead of traveling to Japan, Respondent brought Pawel to Hudson, Ohio, with Rolland Johannsen. *Id.* Since Petitioner Wasniewski's initiation of this action in the

-2-

Case No. 5:06-CV-2548
Gwin, J.

Northern District of Ohio, Respondent has again moved Pawel, this time to Omaha, Nebraska. *Id.*

Upon discovering Respondent Johannsen's abduction of Pawel, Petitioner Wasniewski immediately initiated a search for his son through the local police department, Polish Family Court, Poland's Ministry of Justice, and the National Center for Missing and Exploited Children ("National Center") in the United States. [Docs. 1, 38.] In April 2006, the National Center finally located Pawel in Hudson, Ohio and helped Petitioner retain *pro bono* counsel to file a Hague Convention petition for Pawel's return. [Doc. 38.]

On October 23, 2006, Petitioner Wasniewski filed his Petition for Return of Child with this Court. [Docs. 1, 38, 43.] In April and June 2007, the parties requested the Court appoint a guardian *ad litem* and attorney for Pawel, which the Court did on June 15, 2007. [Doc. 46.] During this time, Petitioner also filed for summary judgment, Doc. 38, which Respondent opposed, Doc. 43.

On July 13, 2007, the Court issued an Opinion and Order that granted, in part, and denied, in part, Petitioner Wasniewski's summary judgment motion. [Doc. 51.] Based largely on Respondent's own admission, the Court found that Johannsen wrongfully removed Pawel from Poland in contravention of the Hague Convention. *Id.* The Court also equitably tolled a one year time limit contained in the Convention based on Johannsen's abduction of Pawel and secreting of the Child in the United States. *Id.*

As a result of its July 13, 2007 ruling, the remaining issue before the Court is whether Pawel "has attained an age and degree of maturity at which it is appropriate for the Court to consider his views" in determining whether to return him to Poland pursuant to the Hague Convention. *Id.* A related question asks whether Pawel's opinion results from influence exerted over him. *Id.*

Case No. 5:06-CV-2548
Gwin, J.

## II. Legal Standard

Articles 12 and 13 of the Hague Convention govern the scope and nature of a court's exercise of its jurisdiction once it finds that a child has been "wrongfully removed" from his country of habitual residence. Article 12 of the Hague Convention mandates the "forthwith" return of a child "wrongfully removed or retained:"

> where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

Hague Convention, art. 12.

Once a petitioner meets his burden by proving wrongful removal of the child, the court should order the child's prompt return to the country of his habitual residence unless the person resisting removal can establish an affirmative defense or exception found in Articles 12, 13, or 20 of the Hague Convention. 42 U.S.C. § 11601(a)(4). Exceptions and defenses under Article 13(b) or Article 20 require proof by clear and convincing evidence; Article 12 and other Article 13 exceptions and defenses require proof by a preponderance of the evidence. 42 U.S.C. §§ 11603(e)(2)(A), (B).

> Article 13 of the Convention states:
>
> Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that-
>
> a. the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal of retention; or
>
> b. there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

Case No. 5:06-CV-2548
Gwin, J.

> *The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.*
>
> In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

Hague Convention, art. 13 (emphasis added). Thus, Article 13's unnumbered paragraph contains the Convention's "age and maturity exception," that, as discussed below, presents Respondent Johannsen's only defense and that she must establish by a preponderance of the evidence.[1]

Evidenced by the Convention's text, Article 13's age and maturity exception leaves its application wholly to the discretion of the court, which "may" refuse to order the return of an abducted child. *Id.* A court must apply the age and maturity exception narrowly. 42 U.S.C. § 11601(a)(4) (providing that "[c]hildren who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies"). *See also England v. England*, 234 F.3d 268, 272 (5th Cir. 2000); *Skrodzki v. Skrodzka*, Case No. 06-CV-3428, 2007 WL 1965391, at *9 (E.D.N.Y. July 2, 2007); *Tsai-Yi Yang v. Fu-Chiang Tsui*, Case No. 2:03-CV-1613, 2006 WL 2466095, at *15 (W.D. Pa. Aug. 25, 2006); *Locicero v. Lurashi*, 321 F. Supp. 2d 295, 298 (D.P.R. 2004); *Hazbun Escaf v. Rodriquez*, 200 F. Supp. 2d 603, 615 (E.D. Va. 2002); *Friedrich v. Thompson*, Case No. 1:99-CV-772, 1999 WL 33954819, at *6 (M.D.N.C. Nov. 26, 1999); *In re Nicholson*, Case No. 97-1273-JTM, 1997 WL 446432, at *3 (D. Kan. July 7, 1997).

While a court may take account of a child's views on his preferred living arrangement, the

---

[1] Respondent attempted to raise a belated "grave risk of harm" defense in her bench trial brief. [Doc. 66.] Petitioner objected to Respondent's efforts, Doc. 70, which objection the Court sustained during the July 30, 2007 pre-trial motion practice.

Case No. 5:06-CV-2548
Gwin, J.

child's opinion does not determine a court's ruling under the Convention. *See, e.g.*, *Giampaolo v. Erneta*, 390 F. Supp. 2d 1269, 1285 (N.D. Ga. 2004); *Locicero*, 321 F. Supp. 2d at 298; *Thompson*, 1999 WL 33954819, at *7. Further, a court should not consider a child's opinion if it results from another's influence. *De Silva v. Pitts*, 481 F.3d 1279, 1286 (10th Cir. 2007) (citing *In re Robinson*, 983 F. Supp. 1339, 1343-44 (D. Colo. 1997)).

The Explanatory Report to the Convention sheds light on the rationale behind Article 13's age and maturity exception and its framers' intended application:

> such [an age and maturity] provision is absolutely necessary given the fact that the Convention applies, ratione personae, to all children under the age of sixteen; the fact must be acknowledged that it would be very difficult to accept that a child of, for example, fifteen years of age, should be returned against its will. Moreover, as regards this particular point, all efforts to agree on a minimum age at which the views of the child could be taken into account failed, since all the ages suggested seemed artificial, even arbitrary, it seemed best to leave the application of this clause to the discretion of the competent authorities.

Elisa Perez-Vera, ACTES ET DOCUMENTS DE LA QUATORZIEME SESSION, Vol. III, 426, para. 30.

The Hague Convention's framers did not intend courts to allow this exception to defeat the larger goals of the Convention itself:

> To conclude our consideration of the problems with which this paragraph deals, it would seem necessary to underline the fact that the three types of exception to the rule concerning the return of the child must be applied only so far as they go and no further. This implies above all that they are to be interpreted in a restrictive fashion if the Convention is not to become a dead letter . . . [A] systematic invocation of the said exceptions, substituting the forum chosen by the abductor for that of the child's residence, would lead to the collapse of the whole structure of the Convention by depriving it of the spirit of mutual confidence which is its inspiration.

*Id.* at para. 34.

### III. Analysis

As set forth in the Court's July 13, 2007 Opinion and Order, Petitioner Wasniewski has

Case No. 5:06-CV-2548
Gwin, J.

established that Respondent Johannsen "wrongfully removed" Pawel from Poland on November 1, 2004 in contravention of the Hague Convention. [Doc. 51.] The burden now shifts to Johannsen to establish the applicability of an affirmative defense or exception as set forth in Articles 12, 13, or 20 of the Convention. 42 U.S.C. § 11601(a)(4). As indicated, Johannsen has raised Article 13's age and maturity exception and says that Pawel "is sufficiently mature to have his wishes [to remain in the United States] honored" and, as such, "the Court should afford a high degree of weight" to Pawel's views. [Doc. 85.]

In keeping with established jurisprudence, the Court construes Respondent Johannsen's attempt to apply the Hague Convention's age and maturity exception narrowly. The Court notes that the age and maturity exception seldom presents adequate grounds to tip the scales in favor of an abductor where, as here, no other defense or exception exists. In considering the Convention's age and maturity exception in this case, the Court gives Pawel's opinion limited, and certainly not controlling, authority. Finally, the Court finds that Pawel's responses during his *in camera* interview and at trial suggest influence by his mother which reduces the amount of weight afforded to the Child's views.

Based on the Court's *in camera* interview of Pawel and the testimony adduced at trial, the Court finds Pawel exhibits a level of maturity somewhat less than the level of maturity expected of a typical thirteen-year-old boy. Consequently, although Pawel has indicated his preference to remain with his mother in the United States, the Court will not recognize the narrow age and maturity exception to Johannsen's wrongful removal of Pawel from Poland.

During his *in camera* interview, Pawel told the Court that he wants to remain in the United States to be with his mother in Omaha Nebraska, because he likes his dog, and he has friends in

Case No. 5:06-CV-2548
Gwin, J.

Hudson, Ohio. That Pawel enjoys the company of his mother and his pet and has maintained friendships with children in Ohio does not establish his maturity such that the Court would appropriately consider his views under the Hague Convention. *See, e.g.*, *Skrodzki*, 2007 WL 1965391, at *9 (rejecting a thirteen-year-old's declaration that he prefers life in New York to Poland as insufficient proof that respondent established a cognizable age and maturity exception); *Locicero*, 321 F. Supp. 2d at 298 (finding "[t]he fact that the [abducted thirteen-year-old] child prefers to remain in Puerto Rico, because he has good grades, has friends and enjoys sport activities and outings, is not enough for this Court to disregard the narrowness of the age and maturity exception to the Convention's rule of mandatory return"). *See also England*, 234 F.3d at 272-73 (reversing a district court's recognition of the age and maturity exception on the mere showing that the abducted thirteen-year-old child "has maintained friendships with classmates . . . , likes it here and her situation has stabilized"); *Hazbun Escaf*, 200 F. Supp. 2d at 615 (disregarding a wrongfully retained thirteen-year-old's objection to return to Colombia). *And see Tsai-Yi Yang*, 2006 WL 2466095, at *16 (giving "little if any weight" to ten-year-old child's expressed preference to stay in the United States because the "best school is in Pittsburgh," "we have our own pet and our own house, and I have lots of friends, and my grades got better, and my skin got better").

As with the established case law, Pawel's preferences only reveal that he would like to remain in the United States and that some reasons support his preference. Thus, based on the requisite narrow interpretation of Article 13's age and maturity exception, the Court cannot conclude that the exception should apply to Pawel's general hesitance to leave his current surroundings.

If anything, the evidence suggests Pawel lacks the maturity for the Court appropriately to take account of his views under the age and maturity exception. During his *in camera* interview and

-8-

Case No. 5:06-CV-2548
Gwin, J.

at trial, Pawel gave only superficial reasons for not wanting to return to Poland. Also, Dr. Cottam, Respondent Johannsen's child development expert, testified that, although Pawel will enter the seventh grade this fall, he tested at the only third-grade level in spelling and the fifth-grade level in math and English. Respondent Johannsen testified that Pawel cries easily, wants help doing things he should do alone, clings to her, cuddles with her, and would rather be with his mother than playing with other children. Nothing in the record demonstrates Pawel's maturity beyond that reasonably expected of a thirteen-year-old boy. As a result, Respondent Johannsen, the party opposing Pawel's return to his place of habitual residence, does not persuade the Court to except the provisions of the Hague Convention and allow Pawel to remain in the United States.

Briefly addressing the related issue of influence, the Court finds Pawel, like all adolescents, susceptible to suggestion and manipulation. For example, when asked about Poland during his *in camera* interview, Pawel told the Court that he has no good memories of his life there. However, at trial, Pawel admitted that he took several vacations with his father and Petitioner Wasniewski convincingly showed the Court that he and Pawel enjoyed themselves on these trips. Pawel also testified that he had friends in Poland and played sports. Given this testimony and evidence, the Court does not credit Pawel's blanket statements about Poland. The Court considers Pawel's generalized statements as evidence of his mother's influence that biased Pawel's opinion of Poland, particularly given Johannsen's efforts to isolate Pawel from his father and his earlier childhood.

Finally, the Court reaches its conclusion with deference to the Hague Convention's intent that the age and maturity exception "be interpreted in a restrictive fashion" to avoid the Convention's becoming a "dead letter." As noted in the Court's July 13, 1007 summary judgment ruling: "The Hague Convention's purposes would be directly defeated were parents allowed to

-9-

Case No. 5:06-CV-2548
Gwin, J.

circumvent the Convention's strictures by first fleeing from the law and then using its provisions to protect their wrongful act. The Court cannot condone such a result." [Doc. 51.] Thus, even if the Court determined that Pawel had reached an age and degree of maturity such that the Court should give his opinion weight, refusing to return him to Poland under the facts of this case would be inappropriate and achieve exactly the result against which the Convention's framers counseled.

In view of the narrowness of the age and maturity exception to the Hague Convention's rule of mandatory return, the general nature of Pawel's objection to returning to Poland, evidence of others' influence on Pawel's opinion, and the goals of the Convention itself, the Court finds taking Pawel's views into account would not be appropriate in this case. Accordingly, the Court declines to invoke Article 13's age and maturity exception.

## IV. Conclusion

Based upon Respondent Johannsen's wrongful removal of Pawel from Poland and absent an exception contained in Article 13 of the Convention, Article 12 mandates that the Court "shall order the return of the child forthwith." The Court **GRANTS** Wasniewski's Hague Convention petition as set forth in the Supplemental Order filed herewith and **ORDERS** Respondent Johannsen's return of Pawel to Poland.

IT IS SO ORDERED.

Dated: August 15, 2007                              s/         *James S. Gwin*
                                                    JAMES S. GWIN
                                                    UNITED STATES DISTRICT JUDGE