UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                              :
WALDEMAR WASNIEWSKI,          :       CASE NO. 5:06-CV-2548
                                              :
          Petitioner,                      :
                                              :
vs.                                          :       OPINION & ORDER
                                              :       [Resolving Doc. No. 93]
MONIKA GRZELAK-JOHANNSEN,  :
                                              :
          Respondent.                    :
                                              :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this Opinion and Order, the Court decides whether to grant Respondent Monika Grzelak-Johannsen's ("Johannsen's") "Emergency Motion for Stay Pending Appeal" in this Hague Convention child kidnapping case. [Doc. 93.] Specifically, Johannsen invokes Rule 62(e) of the Federal Rules of Civil Procedure to request that the Court "stay" its Opinions and Orders, Supplemental Order, and Judgment that granted the Petition for Return of Child of Petitioner Waldemar Wasniewski ("Wasniewski") for the return of his son, Pawel Wasniewski ("Pawel" or "the Child") after a showing of Johannsen's wrongful removal of Pawel from Poland and Johannsen's failure to establish a defense recognized under the Convention. Wasniewski opposes Johannsen's motion. [Doc. 98.]

For the following reasons, the Court **DENIES** Respondent's request for a stay.

Case No. 5:06-CV-2548
Gwin, J.

## I.  Background

In two earlier decisions and based on Sixth Circuit precedent, other relevant case law, and the Hague Convention, the Court found Respondent "wrongfully removed" Pawel from Poland, his country of habitual residence, in contravention of the Hague Convention.  [Doc. 51.]  In so finding, the Court equitably tolled Article 12 of the Convention which would have allowed Johannsen to assert a defense to demonstrate that, despite her abduction of Pawel, the Child has become "well settled" in the United States and, therefore, the Court should not order Pawel's "forthwith" return to Poland.  *Id.*  However, the Court allowed Johannsen to proceed to a bench trial on the issue of whether Pawel has reached a level of "age and maturity" such that the Court should take his opinion into account in its determination of whether to order the Child's return to Poland pursuant to the requirements of the Convention.  *Id.*

Respondent Johannsen presented evidence and argument at a bench trial held on July 30, 2007.  After trial, the Court gave the parties the opportunity to submit post-trial briefings, which both parties did  [Docs. 81, 84, 85, 86, 87, 88.]  On August 15, 2007, the Court granted Petitioner Wasniewski's petition for the return of Pawel to Poland based on all of the evidence contained in the record and the parties' evidence and argument adduced at trial, including Pawel's *in camera* interview.  [Docs. 89, 90,91.]  Johannsen's instant motion followed, which Wasniewski opposes.  [Docs. 93, 98.]

Case No. 5:06-CV-2548
Gwin, J.

## II. Legal Standard

When deciding whether to stay an order pending appeal, a court need consider four factors: (i) the movant's likelihood of prevailing on the appeal's merits; (ii) the likelihood of the movant's irreparable harm absent a stay; (iii) the prospect of harm to others if the court grants the stay; and, (iv) the public interest in granting the stay. *Mich. Coal. of Radioactive Materials Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Although "[t]hese factors are not prerequisites that must be met, but interrelated considerations that must be balanced together," a movant must demonstrate more than a mere possibility of success on the merits. *Id.* Typically, a movant will have great difficulty making such a showing, because the movant seeks such relief after a district court has fully considered the merits of the underlying action and issued judgment. *Id.* As such, the movant must effectively demonstrate "that there is a likelihood of reversal." *Id. See also Detroit Free Press, Inc. v. Ashcroft*, Case No. 02-1437, 2002 WL 1332836, at *1 (6th Cir. Apr. 18, 2002).

In addition to establishing *Griepentrog*'s four factors, a movant must also demonstrate that denying a motion for a stay would cause not just harm, but irreparable harm. *Greipentrog*, 945 F.2d at 153 (finding "the key word in this consideration is irreparable"). Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. *Id.* The availability of other corrective relief at a later date weighs heavily against a finding of irreparable harm. *Id.*

"Staying the return of a child in an action under the Convention should hardly be a matter of course." *Friedrich v. Friedrich*, 78 F.3d 1060, 1063 n.1 (6th Cir. 1996) (Boggs, C.J.). "The aim of the Convention is to secure prompt return of the child to the correct jurisdiction, and any unnecessary delay renders the subsequent return more difficult for the child, and subsequent

Case No. 5:06-CV-2548
Gwin, J.

adjudication more difficult for the foreign court." *Id.* Many courts rely on *Friedrich* and to refuse to stay the return of a child in a Hague Convention action. *See, e.g.*, *Robles Antonio v. Barrios Bello*, Case No. 04-12794-GG, 2004 WL 1895123 (11th Cir. June 10, 2004); *Simcox v. Simcox*, Case No. 1:07CV096, 2007 WL 2156383, at *3 (N.D. Ohio July 16, 2007); *Koch v. Koch*, Case No. 05C1158, 2006 WL 503231, at *2 (E.D. Wis. Feb. 27, 2006).

### III.  Analysis

As discussed below, in considering Respondent's motion to stay its August 15, 2007 Opinion and Order, the Court finds that Johannsen has no likelihood of prevailing on the merits of her appeal, has not demonstrated irreparable harm to herself absent a stay, understates the prospect of harm to Petitioner Wasniewski and Pawel if the Court grants the stay, and shows no public interest in the stay. As a result, the Court will not grant Respondent Johannsen's request for a stay.

### A.  No Likelihood of Success on the Merits

Respondent postulates her likely success on appeal by contending that the Court improperly excluded her well-settled defense on summary judgment, excluded evidence of Pawel's alleged abuse, and erred in its factual finding that Pawel did not possess the requisite level of maturity such that his opinion should be taken into consideration, and presumes that if Pawel's opinion were considered, it would be sufficient to stop his return to the country that the proper juvenile court ordered.. [Doc. 93.] The Court disagrees.

1.  *The Court Properly Tolled Article 12's One Year Filing Period and Correctly Excluded Respondent's Well-Settled Defense*

First, the Court properly tolled Article 12's one year filing period and correctly excluded Johannsen's "well-settled" defense. Respondent says that the Court erred in its decision because

Case No. 5:06-CV-2548
Gwin, J.

the application of equitable tolling to Article 12 represents a "novel issue" in the Sixth Circuit. *Id.* This argument fails to demonstrate Respondent's likelihood of success on the merits. *Griepentrog*, 945 F.2d at 153. Johannsen's merely stating that the Sixth Circuit has not yet reached an issue fails to establish her likely success. As the Court noted in its July 13, 2007 Opinion and Order, "[m]ost courts that have examined [the] question [of equitable tolling] find that wrongful removal accompanied by efforts to secrete a child's location tolls the one year period during which the issue of whether the child is well-settled is not before the court." *See* Doc. 51 (citing *Furnes v. Reeves*, 362 F.3d 702, 724 (11th Cir. 2004); *Mendez Lynch v. Mendez Lynch*, 220 F. Supp. 2d 1347, 1362-63 (M.D. Fla. 2002)). Thus, other Circuit and District Courts recognize that equitable tolling does apply to the well-settled defense, which makes Respondent's success on appeal even less likely.

Respondent next says that, even if equitable tolling applies, the Court did not properly exercise its equitable discretion in this case. [Doc. 93.] The record – and Respondent's own testimony – reflects an abundance of facts supporting the Court's finding that Johannsen's admittedly wrongful abduction of Pawel warrants a tolling of Article 12's one year limitation and that "Article 12's proscribed time frame should not be considered here, where Johannsen absconded with Pawel without prior notice or post-abduction contact." [Doc. 51.]

Other courts have held that behavior less flagrant than Respondent's justifies tolling of Article 12's one-year time period. *See, e.g.*, *Van Driessche v. Ohio-Esezeoboh*, 466 F. Supp. 2d 850 (S.D. Tex. 2006) (applying equitable tolling even though the respondent applied for a driver's license and permanent visa using her correct address, applied for the child's identification card using her real name and address, and openly registered the child in school because the respondent did not expressly reveal her location to the petitioner); *Mendez Lynch*, 220 F. Supp. 2d at 1347 (applying

Case No. 5:06-CV-2548
Gwin, J.

equitable tolling despite petitioner's regular e-mail contact with respondent because respondent refused to provide her address and phone number and refused to return the child to Argentina upon request). Thus, the Court founded its decision to equitably toll Article 12's one-year time period on uncontroverted facts and established law. Respondent does not establish that the Sixth Circuit will reverse the Court's decision on appeal.

Respondent next says that "she did not actively conceal Pawel from Petitioner" and suggests that Petitioner Wasniewski easily could have located Pawel in Ohio. [Doc. 93.] On the contrary. The Court considered all of the evidence on the issue of Johannsen's concealment of Pawel and determined that no reasonable fact finder could conclude that Respondent did anything less than actively conceal Pawel from his father. For example, as Johannsen admits in her instant motion, she lied to her parents by telling them that she took Pawel to Japan.[1]  *Id.*  Johannsen's parents then

---

[1] The record contains the "Transcript of Hearing of a Suspect," dated November 22, 2004, which includes the statement by Maria Grzelak, Respondent's mother, to Monika Pieczonka, Public Prosecutor in Inowroclaw, Poland. [Doc. 45-3.] The statement reads, in pertinent part:

> [Pawel] was at the airport without warm clothes, proper shoes and other necessary things. My daughter said that Roland signed a contract for 3 years related to his departure to Japan. She said they would move to Japan for the time of his contract. She said this was her last visit before flying to Japan. I think that my daughter was to come back to Japan from Poland. My daughter said that she would let us know in the evening. I believed that they would come to Inowroclaw in the evening. I came home thinking that I would see them soon. After I had come back to Inowroclaw, my daughter phoned me on my mobile or my husband's mobile very late. (Phone numbers 604 18 34 72, 606 234 855). She said that Pawel was staying 'with us' and that she would contact me in a few days. I did not ask her for the reason of her decision. . . . My daughter said that she would contact me. Since then she has contacted me only once. It was 4 or 5 days after this event. She phoned on my mobile. She said that they were all very happy, especially my grandson. I asked my daughter where she was. She did not want to answer my question saying it was for my own good. This conversation was very short. I did not try to contact her because when I dialled [sic] the phone numbers which I knew, they turned out to be out of date. I do not know her number in San Francisco where she lived recently. I do not have this number. Since the[n] [sic] neither my daughter nor my [grand]son [sic] contacted us.

*See* Doc. 45-3 at 2.

Case No. 5:06-CV-2548
Gwin, J.

relayed this false information to Petitioner Wasniewski.[2/]  *Id.*

As the Court found in its August 15, 2007 Opinion and Order, Wasniewski immediately initiated his search for Pawel. On November 2, 2004, Wasniewski filed a report with the Inowroclaw police that said, in pertinent part, "in the period between October 21, 2004 and November 2, 2004 his ex-wife Monika Grzelak, staying in the United States, abducted their son, Pawel Wasniewski. On the grounds of the court order it is the father, Waldemar Wasniewski who was entrusted with the execution of parental authority over their son." [Doc. 38-9.] On November 9, 2004, Wasniewski filed in the District Court in Inowroclaw a "Motion for Taking Away a Person Being Under Parental Authority with the Motion Requesting Security for a Claim." [Doc. 38-10.]

Wasniewski submitted undisputed testimony that he worked with the Polish Justice Department and, on June 13, 2005, he filed a "Request for Return" of Pawel with "The American

---

[2/] Pursuant to Rules 60 and 61 of the Federal Rules of Civil Procedure, the Court amends a typographical error in the "Background" sections of its July 13, 2007 and August 15, 2007 Opinions and Orders. [Docs. 51, 89.] Specifically, the Court amends the sentence, identical in each Opinion, that states "[o]n November 2, 2004, Johannsen telephoned Wasniewski and told him that she had taken Pawel to Japan." *See* Doc. 51 at 3; Doc. 89 at 2. Instead, the sentence should read: "On November 2, 2004, Johannsen's mother telephoned Wasniewski and told him that Respondent had taken Pawel to Japan."

Petitioner Wasniewski submitted a sworn affidavit supporting his motion for summary judgment. *See* Doc. 38-14 at 24. In pertinent part, Wasniewski testified:

| Wasniewski: | . . . my ex mother-in-law stated that [Respondent Johannsen and Pawel] are in Japan. So I also looked through the Embassy of Japan, trying to locate them in Japan. |
|---|---|
| Petitioner's Counsel: | When did your ex mother-in-law tell you she believed that Monika was living in Japan with Pawel? |
| Wasniewski: | The following day after the kidnapping occurred, she called me and told me not to come pick Pawel up as usual because they had left to Japan, because Rolland got a contract there. And so she said the same information to the police and the prosecutor. |

*See* Doc. 38-14 at 24-29.

Case No. 5:06-CV-2548
Gwin, J.

Central Authority," i.e., the National Center for Missing and Exploited Children. *Id.* Wasniewski's request stated, in pertinent part:

> On October 31st, in the evening, father – Waldemar Wasniewski brought his son to grandparent's house, [in] Inowroclaw. Pawel Wasniewski was to spend a whole day on Nvember [sic] 1st with his grandparents Maria and Bogdan Grzelak, Waldemar Wasniewski was to recollect son on November 2nd.
>
> At night – on October 31st / November 1st minor's grandmother Maria Grzelak, without knowledge and permission of Waldemar Wasniewski, took Pawel Wasniewski to a meeting with his mother Monika Grzelak, after that Pawel was transfered [sic] trough [sic] the polish border and taken to Amsterdam wherefrom he flew with Monika Grzelak-Johannsen to the USA – to St. Paul (Minnesota). Pawel Wasniewski in all probability stays at the teritory [sic] of the USA.
>
> The grandmother of the child Maria Grzelak informed Waldemar Wasniewski about his son's departure to the [sic] Japan on 2nd of November 2004. Waldemar Wasniewski immediately informed the Police. Presently there is an investigation on abduction of Pawel Wasniewski conducted by Local Prosecutor in Inowroclaw – siganture [sic] Ds. 233/05. During this case Monika Grzelak Johannsen and Maria Johannsen [sic] are on charge of abduction of Pawel Wasniewski (art 211 polish penal code).
>
> * * *
>
> Waldemar Wasniewski have never given a permission to his son's departure abroad. Since October 31st[, 2004,] father didn't have any single information about his son's fate. He hasn't had any contact with his child.

*See* Doc. 38-11 at 3-4.

In addition to his own, undisputed testimony regarding his search efforts, Mr. Wasniewski submitted the affidavit of Susan Rohol, the Supervising Attorney of the International Missing Children's Division from the National Center for Missing and Exploited Children ("NCMEC"), who detailed the efforts to locate Respondent and Pawel. [Doc. 38-12.] Rohol testified that from August 2005 until April 2006, "NCMEC's Case Analysis and Support Division, Project Alert Program, the U.S. Postal Service Inspector, the Ohio and Maryland Clearinghouses, and the Hudson Police

Case No. 5:06-CV-2548
Gwin, J.

Department coordinated their efforts in conducting searches to confirm a location and address for the Respondent/Mother and Child." *Id.*  Rohol further testified that, "on or about April 11, 2006 the Hudson Police Department in the state of Ohio confirmed a location and address for the Respondent/Mother and Child in the Hudson area." *Id.*  Upon locating Pawel, Petitioner Wasniewski secured local counsel and filed this Hague Convention petition for his son's return.

Thus, Respondent has little likelihood of succeeding on her appeal of the Court's equitable tolling of Article 12's one year time frame and dismissal of her "well-settled" defense.[3/]  Respondent admits that she wrongfully removed Pawel from Poland, ample evidence shows that she actively concealed the Child from his father, and Wasniewski convincingly demonstrated that he acted immediately and diligently in his attempts to locate and secure the return of his son.  On the basis of these facts, the Court properly tolled Article 12's one year time frame.

2.  *The Court Properly Excluded Evidence of Any Alleged Child Abuse*

Next, Respondent complains, for a third time, that the Court improperly excluded alleged evidence of Pawel's abuse by Petitioner Wasniewski.  [Doc. 93.]  Respondent's likelihood of success with this argument on appeal is small, particularly because the Sixth Circuit reviews a trial court's decision to admit evidence under an abuse of discretion standard.  *See, e.g.*, *United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006) (citing *United States v. Perry*, 438 F.3d 642, 647 (6th Cir. 2006)).  As noted by the Court at trial, Respondent's allegations of abuse are simply not relevant under the age and maturity defense.  *See, e.g.*, Trial Tr. at 9 ("I don't see where [child abuse allegations] would be relevant.  I mean it may be relevant to a custody dispute that should be heard

---

[3/] Respondent contends that the Court has already recognized that "there is ample evidence that Pawel is well settled in the United States." [Doc. 93.] The Court does not recognize that "ample evidence" exists as to Pawel's degree of settlement in the United States. The Court neither considered this legal conclusion, nor reached it.

Case No. 5:06-CV-2548
Gwin, J.

in Poland or potentially transferred to this country, but I don't see it as relevant to the issue of undue influence.") As such, Respondent did not establish any reason or context for the Court to consider the child abuse allegations.

Respondent's proffered *de minimus* evidence of abuse. As the Court stated at trial, "the things [Respondent] pointed out as being arguable evidence of abuse seem[s] fairly *de minimus* to me . . . . I mean if all you can come up with is that the father purportedly told this child he should be doing better, I think you hurt your own case by suggesting that is evidence that is going to tip the scale one way or the other." *See* Trial Tr. at 9-10. Further, the Court would properly consider such evidence under Article 13(b)'s grave risk of harm defense, which Respondent never raised. It strikes the Court that, had Respondent truly believed, and had evidence to support, Petitioner Wasniewski abused Pawel, Johannsen would have raised this defense. She did not. The Court did not permit Respondent to "backdoor" allegations of abuse through the age and maturity exception. To do so would devolve this Hague Convention case to into a custody dispute. Thus, the Court excluded this evidence at trial.

The Court discredits Respondent's claim that, if Pawel were allowed to testify, "[he] would have testified that Petitioner regularly abused and mistreated him, and that he is afraid of his father." [Doc. 93.] The Court gave Pawela full opportunity to testify *in camera*. During this interview, the Court placed no limitations on Pawel's responses. In fact, the Court asked Pawel to explain why he did not want to return to Poland. Given the full opportunity, Pawel stated he was "afraid" of his father. Pawel did not say anything that approximates a finding of abuse. As a result, the Court finds Respondent's proffered testimony and current contention irrelevant.

Case No. 5:06-CV-2548
Gwin, J.

3.  *The Court Properly Considered, But Disregarded, Pawel's Wishes Based on His Age and Maturity*

Respondent finally claims she will succeed on appeal because the Court improperly concluded, as the fact finder, that Pawel did not possess sufficient age and maturity such that the Court should consider his wishes to remain in the United States. [Doc. 89.] On July 30, 2007, the Court interviewed Pawel *in camera*, conducted a bench trial, listened to the testimony of the witnesses, including Pawel, and evaluated the credibility of the evidence and testimony. Absent a showing that the Court clearly erred in its fact finding, the Sixth Circuit will give due regard to the Court's judgment. *See, e.g.*, Fed. R. Civ. P. 52(a) (providing "[f]indings of fact . . . shall not be set aside unless clearly erroneous . . . and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses").

First, after considering the testimony of all of the witnesses – including the in camera interview of Pawel and his sworn in-court testimony – the Court concluded that Pawel lacks the requisite maturity that would compel the Court to consider his wishes. [Doc. 89.] The Court found that, "[b]ased on the Court's in camera interview of Pawel and the testimony adduced at trial, the Court finds Pawel exhibits a level of maturity somewhat less than the level of maturity expected of a typical thirteen-year old boy". *Id.* The Court cited the factual reasons for its assessment of Pawel's maturity: Pawel gave only "superficial reasons for not wanting to return to Poland," "he tested at only the third grade level in spelling and the fifth-grade level in math and English," "Pawel cries easily, wants help doing things he should do alone, clings to [Respondent], cuddles with her, and would rather be with his mother than playing with other children." *Id.* These facts – uncontroverted by Respondent at trial – have little possibility of being overturned on appeal.

Case No. 5:06-CV-2548
Gwin, J.

Respondent's disagreement with the Court's factual assessment does not create grounds for her prevailing on appeal.

Based on all the factual evidence and testimony, the Court also concluded that Respondent influenced Pawel's wishes to stay in the United States. *Id*. The Court found that "Pawel's generalized statements [about having no good memories of Poland] as evidence of his mother's influence that biased Pawel's opinion of Poland, particularly given Johannsen's efforts to isolate Pawel from his father and earlier childhood." *Id.* Again, Respondent's mere disagreement with the Court's conclusion does not indicate her likelihood of success on appeal.

Respondent incorrectly claims that the Court "assigned no weight to the wishes of Pawel." [Doc. 93.] Instead, after finding that Pawel did not possess the requisite age and maturity for the Court to consider his wishes and that Respondent influenced the Child, the Court then concluded that "refusing to return [Pawel] to Poland under the facts of this case would be inappropriate and achieve exactly the result against which the Convention's framers counseled." [Doc. 83.] The cases cited by Respondent in her Motion to Stay support this approach and conclusion. *See, e.g.*, Doc. 93 at 16 (citing *McManus v. McManus*, 354 F. Supp. 2d 62 (D. Mass. 2005); *De Silva v. Pitts*, 481 F.3d 1279 (10th Cir. 2007)). Thus, the Court did not commit "clear error" in its approach or analysis.

Thus, none of the issues Respondent intends to raise on appeal have a likelihood of success. Finding that Respondent fails this element of the *Griepentrog* test, the Court will deny her request for a stay.

### B. Respondent Does Not Demonstrate Irreparable Harm Absent a Stay

Respondent argues she will suffer irreparable injury the Court does not grant her requested stay because this case will become moot before Respondent obtains appellate review. [Doc. 93.]

Case No. 5:06-CV-2548
Gwin, J.

Respondent misunderstands the law. An appeal from a decision under the Hague Convention does not become moot merely because a child is returned to the custody of the petitioner in a foreign country. *Whiting v. Krassner*, 391 F.3d 540, 545 (3d Cir. 2004); *Fawcett v. McRoberts*, 326 F.3d 491, 496-97 (4th Cir. 2003). Rather, the appeal may proceed as any other appeal. *Id.* Because Johannsen may proceed with her appeal absent a stay, Respondent, as the movant, faces no irreparable harm absent a stay.

### C. Balance of Harm Caused By Granting a Stay Favors Denying Respondent's Motion

Respondent also next claims that "the balance of harms tips decidedly in favor of a stay" because Pawel will be harmed if a stay is not granted, while Mr. Wasniewski will suffer no harm if a stay is granted. [Doc. 93.]

The Court does not agree that harm will come to Pawel absent a stay. Respondent wants the Court to grant her requested stay because not doing so will disrupt Pawel's life. [Doc. 93.] With this argument, Respondent ignores a tenet of the Hague Convention previously highlighted by the Court; namely, "[a] removing parent must not be allowed to abduct a child and then – when brought to court – complain that the child has grown used to the surroundings to which they were abducted. Under the logic of the Convention, it is the abduction that causes the pangs of subsequent return." *Koch*, 2006 WL 503231, at *1 (quoting *Friedrich*, 78 F.3d at 1068). Respondent disrupted Pawel's life when she illegally abducted him to the United States on November 1, 2004. The Court does not credit Respondent's claim.

Respondent also claims that Pawel will suffer emotional harm if he is returned to Poland. [Doc. 93.] The Court finds this claim fails. When considering whether a party has alleged harm, "the harm alleged must be both certain and immediate, rather than speculative or theoretical."

Case No. 5:06-CV-2548
Gwin, J.

*Greipentrog*, 945 F.2d at 153. Respondent has presented no evidence that Pawel will suffer emotional harm upon his return to Poland and the Court disregards her speculation. Sadly for Pawel, Respondent left Pawel in Poland, choosing to enable herself to come live with Johannsen in the United States. No doubt, Pawel would have fared better had his mother remained proximate to him. But given her decision, any difficulties for Pawel do not create irreparable injury. Further, the Convention intends that these issues be resolved by the courts enjoying proper jurisdiction over child custody issues, in this case the Polish Courts.

Respondent next claims that Petitioner Wasniewski will suffer no harm if the Court grants her requested stay. [Doc. 93.] This contention fails to recognize that if the Court grants a stay, Petitioner Wasniewski will continue to suffer from the very harm that led to this lawsuit, i.e., the absence of Pawel from his life. Johannsen illegally abducted Pawel nearly three years ago in direct violation of the orders of the Polish Courts and, since then, she has forced Petitioner Wasniewski to live without his son. Petitioner Wasniewski has done everything in his ability to reunite with Pawel, including contacting local and international authorities, searching for his son, securing *pro bono* counsel, filing a Hague petition, and flying to the United States to secure his son's lawful return. Continued separation from Pawel would cause Petitioner Wasniewski continued harm.

### D. Denying Respondent's Requested Stay Serves the Public Interest

Finally, Respondent says Court will serve public interest by granting her requested stay because doing so will ensure the procedures of the Hague Convention are properly addressed before practically deporting a child, against his wishes, while legal proceedings are still pending in the United States concerning the return. [Doc. 93.] Respondent's attempted argument misconstrues the public's interest in the Hague Convention.

Case No. 5:06-CV-2548
Gwin, J.

The purpose of the Hague Convention is "to secure the prompt return of children wrongfully removed to or retained in any Contracting State." *Koch*, 2006 WL 503231, at *2 (quoting Hague Convention, Preamble). *See also Gaudin v. Remis*, 415 F.3d 1028, 1035 (9th Cir. 2005) (noting "the basic purpose and function of the Hague Convention [is] based upon the principle that the home country should make the custody determination whenever possible"); *Friedrich v. Friedrich*, 78 F.3d 1060, 1064 (6th Cir. 1996) (finding that "[t]he Hague Convention is generally intended to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court); Elisa Perez-Vera, ACTES ET DOCUMENTS DE LA QUATORZIEME SESSION, Oct. 6-25, 1980, Vol. III, ¶ 16 ("The Convention . . . places at the head of its objectives the restoration of the status quo, by means of the prompt return of children wrongfully removed to or retained in any Contracting State"). Thus, the Court best serves the public's interest in the Hague Convention by promptly returning Pawel to Poland.

Thus, in summary, the Court denies Respondent's motion for a stay of its August 15, 2007 Order that she facilitate Pawel's return to Poland on August 29, 2007. Respondent has failed to demonstrate a likelihood of success of appeal. Moreover, Pawel's prompt return to Poland will not in any way irreparably harm Respondent as she will still be able to pursue her appeal in the Sixth Circuit, or an action for custody of her son in the Polish family courts, the proper forum for such actions. Granting Respondent Johannsen's requested stay would harm Petitioner Wasniewski by depriving him of his right to parent his son and would thwart the orders of the Polish District Court that granted parental authority to Wasniewski. Finally, ensuring Pawel's return to Poland furthers the purposes of the Hague Convention and serves the public interest of securing the prompt return of wrongfully removed children to their country of habitual residence.

Case No. 5:06-CV-2548
Gwin, J.

## IV.  Conclusion

For these reasons, the Court **DENIES** Respondent's request for a stay.

IT IS SO ORDERED.


Dated: August 27, 2007                                   s/         *James S. Gwin*
                                                                              JAMES S. GWIN
                                                                              UNITED STATES DISTRICT JUDGE